[No. 12064. Department One. July 20, 1915.]

UNIVERSITY STATE BANK, *Respondent*, v. THE CITY OF
BREMERTON, *Appellant*.[1]

MUNICIPAL CORPORATIONS—LOCAL IMPROVEMENTS—WARRANTS—DE-
FENSES — NONNEGOTIABILITY. Any defense available against con-
tractors in public work to whom a nonnegotiable warrant was is-
sued is available against their assignee.

SAME — LOCAL IMPROVEMENTS—WARRANTS—ACTIONS—DEFENSES—
ESTOPPEL. The issuance of a final warrant to a contractor on public
work which included the amount of a fixed estimate for the city's
expenses for which the city should have issued a separate warrant
to be indorsed by the contractor and returned to the city, does not
estop the city from interposing the defense of a credit therefor, in
an action on the warrant issued.

SAME — LOCAL IMPROVEMENTS—WARRANTS—PAYMENT—EVIDENCE—
SUFFICIENCY. The evidence establishes that a certain city warrant
issued to a contractor on public work was not intended to apply as
a payment on the last warrant issued but was intended to apply
on prior warrants, where the amount exactly equalled the total of
a sum due on one of the prior warrants plus a sum indorsed on an-
other prior warrant, of which there was no evidence that the holder,
a bank, had received the money, and no evidence that the city had
paid it.

SAME — LOCAL IMPROVEMENTS—WARRANTS—ACTIONS—DEFENSES—
CREDITS—ESTOPPEL. Where it is impracticable until after final settle-
ment to determine or withhold the amount of cash discounts due
from a contractor to a city by reason of cash payments of property
owners, the city is not estopped from claiming a credit therefor by
reason of its nonretention of a thirty per cent protection fund for
which the contract provided.

LIMITATION OF ACTIONS—LOCAL IMPROVEMENT—WARRANTS—NOTICE
OF FUND. An action upon a final warrant drawn on a special im-
provement fund is not barred by the statute of limitations, where
the plaintiff had no knowledge of the condition of the city fund
within three years prior to the commencement of the action.

MUNICIPAL CORPORATIONS—LOCAL IMPROVEMENTS—WARRANTS — IN-
TEREST. In an action upon a special fund warrant expressly provid-
ing that it is noninterest bearing, interest should not be allowed on
the warrant.

[1] Reported in 150 Pac. 439.

Cross-appeals from a judgment of the superior court for Kitsap county, French, J., entered January 17, 1914, in favor of the plaintiff, in an action for an accounting, tried to the court. Modified.

*Jas. W. Carr*, for appellant.

*Higgins & Hughes* (*Hyman Zettler*, of counsel), for respondent.

Crow, J.—Action by University State Bank, a corporation, against the city of Bremerton and certain of its officials to recover $2,373.74 on a local improvement warrant. From a judgment in plaintiff's favor against the city for $1,736.22, the city appeals and the plaintiff cross-appeals.

As both parties have appealed, we will refer to them as plaintiff and defendant. The facts seem to be that on August 17, 1908, McDermott & Driscoll, contractors, made two separate bids for the improvement of certain streets in local district No. 34. One bid was for certain unit prices in the event the city made payment in local improvement bonds. The other was for lower unit prices for payments to be made in cash. A contract was entered into for the larger unit prices and for payments in bonds. Shortly thereafter, for the benefit of property owners who might desire to pay cash and obtain the lower unit prices, a supplemental contract was entered into, which, after acknowledging the prior contract, the alternative cash payment bid, and the desire of the city to preserve to property owners the privilege of making cash payments, provided as follows: .

"It is agreed that for all cash paid prior to the date for the issuance of the said bonds under the said ordinance and contract, such discount or allowance shall be made by the said McDermott & Driscoll, for the benefit of the said property owners making such cash payments, as will give to them and all of them the same benefit, allowance, or deduction as would have been given them had the city accepted the said cash proposal of the said McDermott & Driscoll."

It is practically conceded that the total saving thus made to property owners paying cash amounted to $641.71 or $637.52, the former amount being alleged in the original complaint, and the latter being alleged by amendment subsequently made. Further material terms in the contract, relating to what are designated as "fixed estimate" and "protection fund," read as follows:

"It is hereby expressly provided that the warrants which shall be issued to the contractor in the amount of *actual cost* dollars, in payment of the fixed estimate for list of owners, engineering and advertising expenses incident to this improvement shall be by him properly endorsed, made payable to, and delivered to the city clerk for transfer by him to the proper funds to meet said expenses, and the contractor for this improvement shall have no claim to any portion of the warrants issued in payment of said fixed estimate, except to endorse and deliver them as herein provided."

The evident intention of this stipulation was that, whereas the city had incurred certain preliminary expenses for engineering, obtaining names of property owners, and publishing advertisements, which it was contemplated should be refunded by the contractors, a warrant for the exact amount of such expenses (subsequently found as a "fixed estimate" to be $1,310.39) should be issued to the contractors, and upon the special improvement fund, and by them should be indorsed and delivered to the city clerk, so that the city might collect the same and reimburse itself. The contract further provided that:

"On or about the 20th day of each month during the progress of said work, bonds and warrants shall be issued for seventy per cent of the contract price of the estimated amount of said work returned by the city engineer as having been done during the preceding calendar month, and the balance of said contract price, being thirty per cent thereof, shall be retained to secure the payment of laborers who shall have performed work thereon, and materialmen who have furnished materials therefor."

Eight nonnegotiable, noninterest bearing, special fund warrants were issued from time to time by the city in payment for the work, totaling $25,721.40, the entire contract price, estimated on the higher unit prices. It appears that of this amount $2,409.77 was to be paid by the city from its general fund as its proportion of the cost of the improvement. It is a fair inference from the record that, if the city had converted this $2,409.77 into the special improvement fund, as it should have done (*Hemen v. Ballard*, 40 Wash. 81, 82 Pac. 277), that fund, together with discounts due property owners who had paid cash, would have been sufficient to fully satisfy all special fund warrants which the city issued.

All special fund warrants issued by the city were pledged to the plaintiff by the contractors as collateral security, and warrant No. 8, the one upon which this action is predicated, was purchased afterwards by the plaintiff. Warrants Nos. 1 to 7 were paid and are not in dispute. Warrant No. 8, the last one issued under the contract, was issued on June 7, 1909, for $3,932.13, on the special improvement fund. It is not disputed that, on October 16, 1909, $1,558.39 was paid on this warrant. All other payments claimed by the city are disputed. The record is incomplete and unsatisfactory. Exhibits referred to in the statement of facts and the abstract have been lost, cannot be found, and are not before us. It clearly appears, however, that the city officials have failed to keep accounts in such a manner as will enable any one to ascertain the exact condition of the special improvement fund. It seems to be conceded that an assessment was levied on the property of all owners who did not pay cash, and there is no contention that it was not fully collected by the city. The principal difficulty is to ascertain how the fund has been disbursed.

Plaintiff commenced this action on or about March 27, 1913, against the city, its mayor, clerk and treasurer, to recover $2,373.74, the difference between the conceded payment of $1,558.39 and the face value of warrant No. 8. It asked

an accounting and judgment against such of the defendants as should be found responsible, demanding such accounting by reason of the unsatisfactory condition of the city records and the dereliction of the city officials. The defendants pleaded payment as follows:

"Fixed estimate, for which the contractors had failed to endorse a warrant to the city . . . . . . . . $1,310.39

"Payment on July 24, 1909, by general fund warrant No. 2413 . . . . . . . . . . . . . . . . . . . . . . . . . 1,099.38

"Payment on October 16, 1909, not in dispute. . . 1,558.39

"Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $3,968.16"

The payments thus pleaded exceeded the face value of warrant No. 8 by $36.03, which the city claimed was allowed as interest. Defendants further allege that no allowance had been made to the city, as provided by the supplemental contract, for discounts to property owners who made payments in cash, and that by reason thereof $641.71 was due from the contractors. When No. 8, the final special fund warrant was issued, the city should have issued two warrants, one for $1,310.39, the amount of the fixed estimate, to be indorsed and returned to the city clerk, and one for $2,621.74; but it issued a single warrant, No. 8, for $3,932.13, and no warrant was issued, indorsed, or redelivered to the city clerk to refund the fixed estimate. The trial court held that the city was estopped from claiming any credit for the fixed estimate, as it issued a single final warrant without protecting itself or deducting the amount then due it. In refusing this credit, the trial court committed prejudicial error. The warrant is nonnegotiable, and any defense available against the original contractors to whom it was issued is also available against their assignee. *Union Savings Bank and Trust Co. v. Gelbach*, 8 Wash. 497, 36 Pac. 467, 24 L. R. A. 359; *Bardsley v. Sternberg*, 17 Wash. 243, 49 Pac. 499; *West Philadelphia Title & Trust Co. v. Olympia*, 19 Wash. 150, 52 Pac. 1015; *State ex rel. Olympia Nat. Bank v. Lewis*, 62 Wash. 266, 113 Pac. 629.

Under the doctrine announced in these cases, it would seem that the city is entitled to interpose any defense against warrant No. 8 in this action which it might have interposed as against the original contractors. If the original contractors still held the warrant, the city undoubtedly could claim credit for $1,310.39, the fixed estimate to which it is entitled. We fail to see why it may not claim the same credit as against the plaintiff in this action. The credit should have been allowed.

The dispute over the alleged payment of $1,099.38, pleaded by the city and claimed on account of general fund warrant No. 2,413, involves the proper application of the amount for which that warrant was issued. The bank claims the general fund warrant was given to apply as part payment upon, and was credited upon, special fund warrants Nos. 6 and 7, while the city claims that it was issued as part payment upon, and should have been credited upon, warrant No. 8, now held by plaintiff. At the time general fund warrant No. 2,413 was issued, special fund warrants numbered from 1 to 6, inclusive, totaling $15,640.71, had been paid, with the exception of $640.71 remaining due on special fund warrant No. 6. At that time, special fund warrant No. 7 had not been paid. Its later payment seems to be evidenced by certain indorsements, one of which is for $458.67. This indorsement is not explained. The bank which held the warrant has no record of having received the money called for by the indorsement, and the city has no record showing its payment. It will be noted that the amount remaining due on special fund warrant No. 6 when general fund warrant No. 2,413 was issued, together with the indorsement of $458.67 on special fund warrant No. 7, totals $1,099.38, the exact amount for which general fund warrant No. 2,413 was issued. The bank insists that this fact sustains its contention that general fund warrant No. 2,413 was given in payment of these two items, while the city contends that $458.67, credit on warrant No. 7, was paid either in cash or by check, and that the $640.71 was due the

city as discounts for cash paid by property owners. The city introduced no satisfactory evidence of the payment of the $458.67 on warrant No. 7, and the allegations of their answer that the discount to be allowed by the contractor was $641.71 was, during the trial, amended to $637.52. These facts convince us that the trial court correctly found that general fund warrant No. 2,413 was not given as part payment upon, or to apply on, special fund warrant No. 8, but was issued as payments on special fund warrants Nos. 6 and 7, and was so applied. It is therefore manifest that general fund warrant No. 2,413 was not issued as part payment upon special fund warrant No. 8, upon which this action is based.

Plaintiff does not contend that the contractors in whose place it stands have paid discounts due on account of cash payments made by property owners. The city contends that it was impracticable to withhold such discounts, as the exact amount thereof could not be, and was not, determined prior to the final issue of the warrants. The court allowed the defendant credit for these discounts, but the bank argues that the city should be estopped to claim the same by reason of its nonretention of the thirty per cent protection fund for which the contract provided. For the reasons above stated, we hold that the city is not estopped and that the credit was properly allowed.

Defendants claim that plaintiff's right of action has been barred by the statute of limitations, but it is apparent that the plaintiff had no knowledge of the condition of the city fund within three years prior to the commencement of this action, and for the reasons announced in *Hemen v. Ballard, supra,* and cases there cited, we hold that the statute has not run.

Plaintiff contends, also, that the court erred in not allowing interest upon the warrants. Its warrant expressly stipulates that it is a noninterest bearing instrument. This being true, we fail to see that the trial court committed any error in this regard.

The judgment of the trial court will be modified by allowing the city credit for $1,310.39, the amount of the fixed estimate, and the judgment for $1,736.22, heretofore entered in plaintiff's behalf, will be reduced to that extent. The defendant city will recover its costs on this appeal.

MORRIS, C. J., CHADWICK, and PARKER, JJ., concur.