[No. 21711. Department Two. October 14, 1929.]

ADAMS COUNTY, *Respondent*, v. RITZVILLE STATE BANK
OF RITZVILLE, *Appellant*.[1]

*Miller & Freese*, for appellant.
*Richard B. Ott* and *G. E. Lovell*, for respondent.

MITCHELL, C. J.—One Guy C. Sturman was employed by Adams county from August 1, 1924, to May 12, 1927, as engineer, who, as such, employed laborers and directed work on various roads of the county. He prepared pay rolls for work done under his direction, and presented them to the county commissioners for allowance. Within three years before the filing of the three suits involved, Sturman padded the pay rolls prepared by him by including therein the names of unknown persons, or the names of persons who had

[1]Reported in 281 Pac. 332.

not performed any road work. Such pay rolls were approved and allowed by the county commissioners, upon which the county auditor drew warrants against the proper funds requesting the county treasurer to pay each of such fictitious persons, naming him, the respective amount due him, that is, the county auditor issued non-negotiable warrants. The county commissioners did not know that the payees were fictitious or had not worked on the roads. The warrants were delivered to Sturman to be delivered by him to the payees, who were supposed to be working under him out in the county. He forged the names of the nominal payees on the back of the warrants, indorsed them with his own signature and delivered them to the Ritzville State Bank of Ritzville. The bank, upon indorsing the warrants, presented them to the county treasurer and received pay for them. Upon learning of the fraud perpetrated by Sturman, and that the warrants had been issued without consideration, the county promptly brought three suits against the bank to recover the amounts it had paid to the bank. One of the suits covered the amount paid on eighteen warrants drawn on the general road and bridge fund; another one covered the amount paid on five warrants drawn on the permanent highway maintenance fund; and still another covered the amount paid on five warrants drawn on the road and bridge fund. The three suits were consolidated for trial, and in each one findings and conclusions were entered in favor of the county for the full amount sued for. The bank has appealed from judgment upon the findings.

The three cases have been presented and argued together in this court, and require but one opinion.

 So far as the rights of the county are concerned, these warrants, conceived in fraud and resting on no consideration whatever, are, and at all times

142

were, void, notwithstanding the good faith of the bank.

The great weight of authority is that a county or city may wage any defense against its non-negotiable warrant which it might have made to the claim upon which the warrant was founded, even when the warrant has fallen into the hands of an otherwise innocent holder. By many decisions that need not be mentioned, that doctrine has been repeatedly upheld in this state, and whether the case is one of defense of the municipality against such a warrant, or one where the municipality seeks to recover money it has paid out on such a warrant, the principle is the same. In *Pacific County v. Willapa Harbor Pub. Co.*, 88 Wash. 562, 153 Pac. 360, where the county was allowed to recover money it had paid by mistake and without authority in law, after stating that, in this state, payments made by a city in violation of law may be recovered by the city (citing cases), and after further saying that this court has frequently restrained counties from carrying out unlawful contracts and from the payment of money under such contracts (citing cases), it was said of the county cases:

"None of these actions sought the return of money illegally paid, as did the city cases, but we find no difference in the governing principle."

That is, whether the county is being restrained from carrying out illegal contracts or paying money thereon, or seeking the return of money illegally paid, the governing principle is the same. 15 C. J., p. 662, § 374; 7 R. C. L., p. 964, § 38.

The right of the county to recover the money from Sturman, or the payees who had rendered no service, had he or they received it from the county, on account of these warrants, cannot be reasonably questioned. The bank to whom he delivered the warrants

bearing his indorsement and the forged indorsements by him of the nominal payees, acquired no better rights than Sturman had. *Bardsley v. Sternberg,* 17 Wash. 243, 49 Pac. 499; *West Philadelphia Title & Trust Co. v. Olympia,* 19 Wash. 150, 52 Pac. 1015; *State ex rel. Olympia Nat. Bank v. Lewis,* 62 Wash. 266, 113 Pac. 629.

In deciding these cases, we have not overlooked *Manker v. American Savings Bank & Trust Co.,* 131 Wash. 430, 240 Pac. 406, and *Bank of California v. National City Co.,* 138 Wash. 517, 244 Pac. 690, reheard by the whole court, 141 Wash. 243, 251 Pac. 561. These cases are not in point. In both of them, municipal bonds were involved, and the ultimate question in each was whether the instruments were negotiable under our statutes upon that subject. The matter of the validity of the bonds as binding obligations was in no way questioned, because they rested upon good and valuable considerations and were regularly issued and delivered. The municipal corporations issuing them did not deny liability. In the present case, however, the municipality is asserting the total invalidity of the warrants, and also its right to recover money it has unlawfully paid out on them because of the non-negotiability of the warrants.

The reason and authorities dealing with the rights of innocent third parties or makers and indorsers of instruments that are negotiable, are not pertinent here. In the brief on the part of the appellant, some cases are cited from other jurisdictions which, for the sake of the argument, may be said to appear to hold in favor of the contentions of the appellant here, but if so, they are so much at variance with the rule in this state that we cannot follow them.

Another argument on behalf of the appellant is that these actions are barred by the statute of limi-

tations. The actions were commenced within three years, but not within two years, and it is claimed that they fall within the two-year statute. It seems clear, however, that in legal effect they are actions arising out of implied liabilities to repay money unlawfully received, and that the three-year statute (Rem. 1927 Sup., § 159, subd. 3) applies. *Seattle v. Walker,* 87 Wash. 609, 152 Pac. 330; *Pacific Coal & Lumber Co. v. Pierce County,* 133 Wash. 278, 233 Pac. 953. See, also, *Soderburg v. King County,* 15 Wash. 194, 45 Pac. 785, 55 Am. St. 878, 33 L. R. A. 670.

Affirmed.

MAIN, PARKER, FRENCH, and MILLARD, JJ., concur.